685 So.2d 868 (1996)
Rod and Carol MANDELSTAM, Appellants,
v.
CITY OF SOUTH MIAMI, etc., et al., Appellees.
No. 95-2753.
District Court of Appeal of Florida, Third District.
October 23, 1996.
Rehearing Denied January 15, 1997.
Eckert, Seamans, Cherin & Mellott, and Stanley B. Price and Eileen Ball Mehta, Miami, for appellants.
Earl G. Gallop, Miami; Johnson, Anselmo, Murdoch, Burke & George, and Richard H. McDuff, Ft. Lauderdale, for appellees.
Before BARKDULL, NESBITT and COPE, JJ.
*869 NESBITT, Judge.
Rod and Carol Mandelstam purchased a parcel of real property with RS-3 zoning, on Red Road near Dante Fascell Park. The City of South Miami zoning ordinance provides public and private schools are permitted uses in R-3 zones. Shortly after the purchase, appellants applied for a special use permit to build a gymnastics school. Thereafter, the city commission met and denied the permit concluding that a "school," under the ordinance, did not include a gymnastic school. On appeal, the circuit court appellate division, affirmed. This court then granted the Mandelstams' petition for certiorari review, quashed the circuit court's decision, and directed the court to enter an order instructing the city to grant the special use permit. See Mandelstam v. City Comm'n, 539 So.2d 1139 (Fla. 3d DCA 1988), rev. denied, 545 So.2d 1366 (Fla.1989).
The circuit court issued the order, and the city issued the special use permit, but attached a number of conditions. Thereafter, not until 1991 did the Mandelstams submit their final site plan. This plan had changes in it when compared to their original proposal. The city turned this plan down based upon an inadequate allowance for parking. However, two orders by the circuit court followed, finding the Mandelstams in compliance with code requirements and ordering the city to approve their development plan. The court also imposed sanctions on the city for failing to meet a court-imposed deadline.
Ultimately, on March 20, 1992, the city issued the permit sought. The Mandelstams subsequently filed suit against the city and Vice-Mayor Cathy McCann, seeking damages resulting from what the Mandelstams claimed was the temporary taking of their property from the time of their original application for the permit until the time when the permit was issued in 1992. The two-count complaint sought damages for inverse condemnation and violation of the Mandelstams' due process rights pursuant to the Civil Rights Act, 42 U.S.C. § 1983. The trial court granted summary judgment in favor of the city and McCann. We affirm the order under review.
Our task in this case is simplified by this court's recent observations in Jacobi v. City of Miami Beach, 678 So.2d 1365 (Fla. 3d DCA 1996). Therein, we concluded that the property owners in that case could not recover for the harm caused by the decision-making process. As stated in Jacobi:
We are cognizant that the property owners were unable to proceed unhindered in the development of their property. They experienced delays and incurred expenses awaiting resolution of the neighbors' appeal to the Board and their successful appeal to the circuit court. However, there is no guarantee that regulatory bodies will not become embroiled in disputed with property owners in which the owners ultimately will prevail. In addition, there is no concomitant guarantee that property owners may recover for harm caused by these disputes.
`Every time a property owner is successful... in a challenge to a governmental regulation ... he is almost certain to suffer some temporary harm in the process. At the least, he will incur significant litigation expenses and frequently will incur substantial revenue losses because the use of his property has been temporarily curtailed while the dispute is being resolved.
The Due Process Clause of the Fourteenth Amendment requires a State to employ fair procedures in the administration and enforcement of all kinds of regulations. It does not, however, impose the utopian requirement that enforcement action may not impose any [] cost upon the citizen unless the government's position is completely vindicated.'
Jacobi, 678 So.2d at 1367 (quoting Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 204-205, 105 S.Ct. 3108, 3126, 87 L.Ed.2d 126, 150 (1985) (Stevens, J., concurring)); see Boatman v. Town of Oakland, 76 F.3d 341, 346 (11th Cir.1996).
Following this analysis we conclude that the instant litigation delay did not constitute a temporary taking under either the federal or state constitution, and thus did not give rise to an inverse condemnation claim. Since this delay was not a violation of the *870 Mandelstams' substantive due process rights, it did not give rise to a claim under 42 U.S.C. § 1983.
As to the claim seeking damages against the vice mayor, the United States Supreme Court has observed:
[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
City of Hialeah v. Fernandez, 661 So.2d 335, 338 (Fla. 3d DCA 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396).
The allegations against McCann were that she spoke to the city planner, and attempted to persuade him to advise against issuing the permit the Mandelstams sought. The Mandelstams correctly argue that qualified immunity is unavailable to officials who, though otherwise covered, act with malice or contrary to clearly established law. Espanola Way Corp. v. Meyerson, 690 F.2d 827 (11th Cir.1982), cert. denied, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). However, a review of the Mandelstams' complaint demonstrates they did not allege either malice or action contrary to the law. Further, we note that notwithstanding McCann's comments to the city planner, he advised the board to issue the permit the Mandelstams sought. In sum, McCann's conduct, as alleged by the Mandelstams, was conduct for which qualified immunity generally applies.
Accordingly, we affirm the order under review.