PARIENTE, Judge.
This case requires us to consider the scope of a sheriffs authority, pursuant to section 48.021, Florida Statutes (1993), to regulate special process servers. We reverse in part because certain requirements imposed by ap-pellee, Broward County Sheriff Ron Cochran (the sheriff), exceeded the scope of his statutory authority. However, because appellant, Scott Sutor, was neither denied appointment nor terminated from his appointed position as a special process server, we affirm the trial court’s dismissal of his civil rights claim.
BACKGROUND FACTS
Sutor filed suit against the sheriff, challenging the sheriffs requirement that special process servers, including Sutor, enter into a Special Process Server Agreement (the Agreement) as a condition of appointment and continued service. Sutor’s three-count complaint requested declaratory relief, in-junctive relief, and damages pursuant to 42 U.S.C. § 1983. Sutor claimed that the sheriff had both exceeded the scope of his authority, pursuant to section 48.021, and violated Sutor’s constitutional rights with respect to his protected property interest in his position as a special process server.
*899 The Agreement provided,[1] in relevant part, that the undersigned agreed to accept and abide by the following provisions:
(1) To use only those pre-numbered four-part “return of service” affidavits provided by the sheriff at a cost of $2 each (the uniform affidavit provision).
(2) To adhere to the fee structure prescribed by section 30.231, Florida Statutes, the statute which establishes the fee structure for sheriffs (the fee provision).
(3) To accept the following termination provisions (the termination provisions):
(A) The appointment of special process server shall be:
1. temporary;
2. served at the pleasure of the sheriff;
3. a privilege not a right; and
4. subject to termination without recourse, at any time without cause, by the sheriff or his authorized agent.
(B) No property interest may be claimed in the appointment, and the special process server waives any rights to the enforcement of any claim regarding any due process rights.
By stipulation, the parties agreed that special process servers appointed by the sheriff were neither employees of the sheriff nor deputy sheriffs. The parties further stipulated that the chief judge of the Seventeenth Judicial Circuit neither approved the use of the uniform affidavits nor authorized the $2 charge. The parties also stipulated that the $2 charge pertained only to special process servers and not to deputy sheriffs serving non-enforeeable original process. Sutor testified, without dispute, that his business as a special process server derived solely from providing services to private attorneys.
In its final judgment, the trial court held that the sheriff did not exceed his statutory authority by requiring special process servers to accept both the uniform affidavit and the fee provisions of the Agreement. However, the trial court declared that the sheriff had exceeded his statutory authority with respect to the termination provisions. The trial court denied injunctive relief based on the lack of a present, actual controversy, and dismissed the civil rights claim without prejudice after finding that Sutor had no property interest in his position as a special process server.
BACKGROUND OF SPECIAL PROCESS SERVER PROGRAM
An overview of the statutory scheme is helpful to an understanding of the parameters of the sheriffs discretion over the appointment of special process servers. Chapter 48 pertains to “Process and. Service of Process” generally. See § 48.01H8.31, Fla. Stat. (1993). Section 48.021, the section at issue in this lawsuit, requires that all process “shall be served by the sheriff,” except that “initial nonenforceable civil process may be served by a special process server appointed by the sheriff as provided for in this section or by a certified process server as provided for in ss. 48.25-48.31.” [2]
Pursuant to statute, special process servers are regulated by the sheriff of each county, and certified process servers are regulated by the chief judge of each county. See §§ 48.021, 48.27. The statutory scheme for the two types of appointed process servers are identical in most respects. Compare § 48.021 with §§ 48.25 — 48.31.
*900 The sheriffs statutory authority to appoint special process servers predated the legislative creation of certified process servers. In 1988, the legislature enacted the Florida Certified Process Server Act, placing certified process servers under the jurisdiction of the chief judge. See Ch. 88-135, § 3, at 720-21, Laws of Fla; see also §§ 48.27-48.31. The purpose of this bill was to establish a list of certified process servers who would be authorized to serve initial nonenforceable process on a person found in the circuit. See Staff of Fla. S. Comm, on Judiciary, CS for SB 484 (1988) Staff Analysis 1 (rev. April 20,1988) (on file with comm.).[3]
The Florida Certified Process Server Act provides detailed minimum statutory qualifications for a certified process server. Initially, there were no statutory qualifications for the sheriffs special process servers other than that the process server be at least 18 years of age, a permanent resident of the state, and of good moral character. See § 48.021(2) (1989). In 1991, after the enactment of the Florida Certified Process Server Act, the legislature substantially amended section 48.021 to “formalize[] the minimum requirement and qualifications of special process servers that are currently at the absolute discretion of county sheriffs.” See Staff of Fla. H.R. Comm, on Judiciary, HB 155, 2095 (1991) Staff Analysis 1 (final May 28, 1991) (on file with comm.); see also Ch. 91-306, § 2, at 2967-68, Laws of Fla. These minimum requirements and qualifications were patterned after the previously-enacted qualifications for certified process servers. Compare § 48.021 with §§ 48.25-48.31.
Subsection 48.021(2)(a) grants the sheriff of each county the authority to establish an approved list of special process servers. The sheriff, like the chief judge, is not required to create a list of process servers. See § 48.021(2)(a), § 48.29(1). However, once the sheriff in the exercise of his discretion establishes the list, the sheriff “shall” add to the list “the names of those natural persons who have met the requirements provided for in this section.” § 48.021(2)(a).
Subsection 48.021(2)(b) establishes the minimum requirements of eligibility.[4] Subsection 48.021(2)(c) allows the sheriff to “prescribe additional rules and requirements directly related to [the statutory criteria of] eligibility of a person to become a special process server or to have his name maintained on the list of special process servers.” (Emphasis supplied).
The first issue we must confront is whether the sheriff exceeded his statutory authority by requiring special process servers to accept certain provisions of the Agreement. We address each challenged provision.[5]
UNIFORM AFFIDAVIT PROVISION
The uniform affidavit provision requires a special process server to use only those forms provided by the sheriff and re *901 quires those forms to be purchased from the sheriff at a cost of $2 each. This provision does not directly relate to the eligibility of a person to become a special process server; therefore, authority for imposing this provision cannot be derived from subsection 48.021(2)(c).
Section 48.21 sets forth the requirements for return of service. While it requires a valid affidavit of execution, this section does not grant the sheriff authority to regulate the forms used by special process servers. The sheriff is also not vested with any statutory authority which allows him to require, as a condition of appointment, that special process servers purchase forms from him at a set fee.[6]
It would be within the jurisdiction of the judiciary, not the sheriff, to prescribe the use of a uniform affidavit for return of service in a civil lawsuit. Service of process is addressed by Florida Rules of Civil Procedure 1.070(a) and (b). Rule 1.070(a) requires that a summons or other process authorized by law be delivered for service. Form 1.902, which has been approved by the supreme court, sets forth a judicially-approved form of summons. Rule 1.070(b) requires proof of service by affidavit.
While our supreme court has not approved a form for return of service, subsection 48.29(6)(b) of the Florida Certified Process Server Act states: “Return of service shall be made by a certified process server on a form which has been reviewed and approved by the court.” (Emphasis supplied). Because certified process servers and special process servers fulfill the same functions when serving process, it is logical that any forms used by either process server be subject to court approval.
THE FEE PROVISION
The fee provision of the Agreement requires special process servers to “[ejharge only a reasonable fee for services as prescribed by Florida Statute 30.231.” Section 30.231 specifies that all sheriffs charge fixed, nonrefundable fees, and subsection 30.231(l)(a) sets a fixed charge of $12 for each summons or writ to be served.[7]
The sheriff is not vested with discretion pursuant to subsection 48.021(2)(c) to regulate the fees of special process servers because the fee provision, like the uniform affidavit provision, does not directly relate to the eligibility of a person to become a special process server. There is no other statute which authorizes the sheriff to set the fees charged by special process servers.
The fee provision, in fact, directly conflicts with the express plain language of subsection 48.021(3), which provides: “A special process server appointed in accordance with this section ... may charge a reasonable fee for his services.” (Emphasis supplied). If the legislature had intended to limit the fees charged by special process servers to those in the schedule of sheriff’s fees, it would have set forth this limitation and not authorized a special process server to charge a “reasonable fee.”
Although charging an unreasonable fee might constitute grounds for revoking a special process server’s appointment, the sheriff was not authorized to limit the fees charged to a fixed fee schedule — especially where, as here, the special process server’s business was obtained solely from private attorneys desiring to utilize his services.
THE TERMINATION PROVISIONS
We also address the termination provisions of the Agreement, which provided that the appointment of a special process server was subject to termination without cause at the sheriff’s pleasure. The termination provisions also required the special *902 process server to waive ail rights to contest termination.
Subsection 48.021(2)(e) provides the following:
The sheriff shall have the discretion to revoke an appointment at any time that he determines a special process server is not fully and properly discharging the duties as a special process server. The sheriff shall institute a program to determine whether the special process servers appointed as provided for in this section are faithfully discharging their duties pursuant to such appointment, and a reasonable fee may be charged for the costs of administering such program.
(Emphasis added).
Subsection 48.021(2)(e) does not grant the sheriff unfettered discretion.[8] To the contrary, this subsection expressly limits the discretion of a sheriff to discharge a special process server. Before discharging a special process server, the sheriff is statutorily required to determine whether the special process server is “faithfully discharging his duties,” a determination that must be made in accordance with a program instituted by the sheriff. Because the termination provisions directly conflict with a special process server’s statutory rights, we affirm the trial court’s finding that the sheriff exceeded his authority by requiring acceptance of the termination provisions.
Despite invalidating the provisions related to termination, the trial court declined Sutor’s request for injunctive relief. The trial court found that “there is no present, actual controversy affecting Plaintiff’s rights with regard to such deficiencies, and unless and until one exists, this Court deems no injunction appropriate.” Because there was no foreseeable threat that Sutor would be subject to an unlawful termination, we find no abuse of discretion in the trial court’s denial of injunctive relief.
CIVIL RIGHTS CLAIM
Sutor’s § 1983 civil rights action was premised on the theory that by requiring him to accept the termination provisions in the Agreement as a condition to continuing to serve process, the sheriff violated his due process rights. Sutor based his right to due process on a protected property interest, created by section 48.021, in his position as a special process server.[9] The trial court held that there had been no implication of due process because Sutor had no property interest in his position. The trial court then dismissed the civil rights claim as “moot without prejudice.”
Sutor’s protected property interest, if any, arose solely as a result of rights created by section 48.021 and did not flow from either the Florida or United States Constitutions. “[Sjtate law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed.” Jacobi v. City of Miami Beach, 678 So.2d 1365, 1367 (Fla. 3d DCA 1996) (emphasis supplied) (citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc), cert. denied, 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995)).
As to any procedural due process claim, even assuming arguendo that section 48.021 did create a protected property interest in Sutor’s position as special process server, procedural due process was never implicated in this ease because Sutor was neither denied appointment nor terminated as a special process. server. Therefore, the trial court properly dismissed the civil rights action without prejudice.
Having properly determined that the civil rights claim should be dismissed “without *903 prejudice,” the trial court should not have reached the substantive issue of whether Sutor had a protected property interest. This issue was not yet ripe for adjudication. Accordingly, the findings in section (4) of the final judgment are stricken.
CONCLUSION
We reverse that part of the trial court’s final judgment upholding the uniform affidavit and fee provisions because these provisions exceeded the scope of both the sheriffs express and discretionary authority granted by statute. We affirm that part of the trial court’s judgment declaring that the sheriff exceeded his statutory authority with respect to the termination provisions.
We affirm the trial court’s denial of injunc-tive relief, and we affirm the dismissal of the civil rights action without prejudice for the reasons stated in this opinion. However, because the civil rights claim was not ripe for adjudication, we strike the trial court’s findings as to whether Sutor had a protected property interest in his position as a process server.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR ENTRY OF AN AMENDED FINAL JUDGMENT.
GUNTHER, C.J., and BAKER, MOSES Jr., Associate Judge, concur.

. Certain of these provisions were enumerated in the documents entitled ‘‘Special Process Server Program" and "Special Process Server Program Policy,” which were referenced by the Agreement.

. Both special process servers and certified process servers perform a valuable function by relieving the sheriff of the statutory duty to serve process in all cases, thus enabling the sheriffs office to concentrate on performing its essential law enforcement functions, such as making arrests, transporting prisoners, and serving writs. The litigants are also better served because their attorneys have the option of utilizing either a special process server or a certified process server from an approved list. There are many situations where the litigant may be in need of more expeditious service than the sheriff can provide at any one particular time because of other pressing demands on the sheriff. There may also be situations which require more personal attention, such as where a particular defendant is evading service or is otherwise difficult to serve.

. Although not explicitly stated, the obvious purpose of this Act was to eliminate the necessity of an individual having to seek court approval pursuant to Florida Rule of Civil Procedure 1.070(b) for appointment as a process server if the person had previously been placed on the approved list of certified process servers. While we can discern no apparent reason for the sheriff and the chief judge to maintain separate lists of process servers, the Senate Staff Analysis specifically stated that "[t]he bill does not affect service by a sheriff's special process server.” See Staff of Fla. S. Comm., CS for SB 484 (1988) Staff Analysis 1 (rev. April 20, 1988) (on file with comm.). Thus, with the enactment of the Florida Certified Process Server Act, two parallel and potentially redundant systems for service of initial process in a civil lawsuit presently exist.

. The statutory requirements provide that:
A person applying to become a special process server shall:
1.Be at least 18 years of age.
2. Have no mental or legal disability.
3. Be a permanent resident of the state.
4. Submit to a background investigation_
5. Obtain and file with the application a certificate of good conduct....
6. Submit to an examination testing the applicant's knowledge of the laws and rules regarding the service of process_
7. Execute a bond_
8. Take an oath that the applicant will honestly, diligently, and faithfully exercise the duties of a special process server.
§ 48.021(2)(b), Fla. Stat. (1993).

.Sutor also challenged the provision requiring special process servers to obtain a private investigator's licence. However, this provision has been eliminated from the Agreement. Thus, we do not need to reach the validity of this requirement.

. We do not reach the issue of whether the sheriff could limit the fees charged if the sheriff subcontracted work to a special process server. Here, although the authority to serve process derived from Sutor's appointment as a special process server by the sheriff, his business derived from work obtained through private attorneys. Thus, the question of the fee to be charged would be a matter of contract between Sutor and the private attorneys.

. By amendment in 1994, the fee chargeable was increased to $20. Ch. 94-170, § 1, at 1040, Laws of Fla.

. Prior to 1991, subsection 48.021(2)(e) specifically provided that "[t]he special process server shall serve at the pleasure of the sheriff.” This language was eliminated by statutory amendment in 1991. See Ch. 91-306, § 2, at 2968, Laws of Fla.

. A property right may be created by the termination provisions in a statute where the statute lists specific grounds for discharge or states that the employee can be discharged only for just cause. See Thomason v. McDaniel, 793 F.2d 1247, 1249 (11th Cir.1986); Ragucci v. City of Plantation, 407 So.2d 932, 935 (Fla. 4th DCA 1981). As to whether or not a property interest in appointment is created by a state statute, see generally Coyne v. City of Somerville, 972 F.2d 440 (1st Cir.1992).